## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mary Kay Thomas,                                    Court File No.: 21-cv-02581-PJS-DJF

        Plaintiff,

v.

Marshall Public Schools (Independent          **PLAINTIFF'S MEMORANDUM IN**
School District 413); Members of the              **SUPPORT OF**
Marshall School Board (in their official          **MOTION TO COMPEL**
capacities); Jeff Chapman (in his
individual and official capacities); Bill
Swope (in his individual and official
capacities); and Superintendent Jeremy
Williams (in his individual and official
capacities),

        Defendants.

## <u>INTRODUCTION</u>

For fifteen years, Plaintiff Mary Kay Thomas ("Thomas" or "Plaintiff") was successfully employed as the principal at Marshall Middle School. This changed, however, when Thomas decided to display an LGBTQ Pride Flag in the school cafeteria in early 2020, after which time a small group of anti-LGBTQ middle-school staff began efforts to take the Pride Flag down and to remove Thomas from her position as principal. To that end, this group made unfounded allegations of misconduct against Thomas. At Defendant Superintendent Jeremy Williams' direction, Defendant Marshall Public School ("MPS") placed Thomas on an involuntary administrative leave and hired an attorney at Pemberton Law P.L.L.P. ("Pemberton"), Joshua Heggem, to investigate the allegations against

Thomas (the "Investigation"). Although Heggem was unable to confirm or deny the allegations in the Investigative Report (or "Report")—and even told the Board the allegations were not substantiated—MPS used the Investigation as support for adverse actions against Thomas, including a demotion.

Despite the fact that MPS has produced the Investigative Report and certain related documents in this litigation while affirmatively relying on the Report to defend against Thomas's claims, Pemberton and Defendants assert privileges over other, selective documents related to the Report.[1] These documents are not privileged or protected, but even if they were, Defendants have waived any arguable protections by way of a subject matter or "at-issue" waiver. Ultimately, Defendants and Pemberton cannot selectively disclose information to their advantage while withholding other relevant information on the same subject. The Court should grant Plaintiff's Motion and compel Defendants and Pemberton to produce documents and information related to Heggem's Investigation and Investigative Report.[2]

---

[1] Pemberton has also moved for a Protective Order to Preclude the Deposition of Joshua Heggem (the "Protective Order"). Plaintiff has opposed the Protective Order, the arguments for which largely overlap with Plaintiff's Motion to Compel and are set forth in Plaintiff's Memorandum in Response to Pemberton's Motion for a Protective Order ("Plaintiff's Response Memorandum"), which Plaintiff incorporates herein by reference. (ECF No. 49.)

[2] By way of Plaintiff's Motion and Opposition to the Protective Order, Plaintiff requests the Court also compel Heggem be produced to testify at a deposition related to the Investigation and Report for the reasons set forth herein and in Plaintiff's Response Memorandum. (ECF No. 49.)

## FACTUAL BACKGROUND

Plaintiff has set forth much of the factual background relevant to her Motion in Plaintiff's Response Memorandum and incorporates it herein by reference. (*See* ECF No. 49, pp. 2–8.) In addition to the information set forth in Plaintiff's Response Memorandum, Plaintiff includes the following information relevant to her Motion to Compel.

### I.    Relevant discovery.

On February 8, 2022, Plaintiff served Defendants with Requests for Production (Set I). (Second Farley Decl. ¶ 4, Ex. A.) Defendants served responses and objections to Plaintiff's Requests for Production on March 9, 2022. (Second Farley Decl. ¶ 5, Ex. B.) Defendants served their Privilege Log on September 27, 2022, which was replaced with a supplemental log on November 2, 2022 ("Defendants' Privilege Log"). (Second Farley Decl. ¶ 6, Ex. C.) Defendants' Privilege Log includes 183 entries between February and May 2023 that appear to relate to the Investigation or Report. (*See* Second Farley Decl. ¶ 7, Ex. D (annotated version of Defendants' Privilege Log, with highlighted entries representing those that relate to the Investigation or Report).)

However, Defendants have produced the Report and documents about the Investigation including, for example, approximately 100 emails to or from Heggem between March 3 and 19, 2021, which relate to the Investigation. (First Farley Decl. ¶ 6.) Defendants also produced Williams' handwritten notes from meetings with Heggem about the Investigation. (First Farley Decl., Ex. 14 (Williams' notes from meeting with Heggem on March 3, 2021, about investigation). And Defendants produced Williams' notes from meetings with Pemberton attorney Kristi Hastings about the Investigation. (First Farley

Decl., Ex. 15 (Williams' handwritten notes from meetings with Hastings on February 12 and March 3, 2021, about investigation.) These notes were explored during one or more depositions. (*See, e.g.*, First Farley Decl., Ex. 3, Williams Dep. at 182:4–16 (discussing Heggem meeting and notes); *id.* at 195:12-24 (discussing Hastings meeting and notes).) Witnesses in this case have also testified about the Investigation, and Heggem's statements about the Investigation, including that he told the board the allegations against Thomas were not substantiated. (*See, e.g.*, *id.* at 8:16–9:13; Second Farley Declaration, Ex. E, Swope Dep. 188:22-198:9.) On March 7, 2023, Plaintiff sent Defendants a letter outlining deficiencies in Defendants' production, including Defendants' failure to produce information related to the Investigation: the letter clarified that Defendants could not withhold documents regarding business and personnel matters.

To discover this information, Plaintiff served a subpoena including Requests for Documents on Pemberton on March 16, 2023. (First Farley Decl., Ex. 10.) Pemberton served its objections to the subpoena on March 30, 2023, and served its Privilege Log and 5,666 pages of responsive communications and documents on April 5, 2023. (First Farley Decl. ¶ 5, Ex. 11, 12.) One file, titled "JMH Investigation – MKT," contains 357 pages of documents, notes, and communications directly related to the Report.[3]

Notably, Pemberton and Defendants were not consistent in what documents related to the Investigation that either decided to disclose. For example, Pemberton has claimed

---

[3] In Plaintiff's Response Memorandum, Plaintiff inadvertently represented this number was 678, which instead appears to be the full file, inclusive of those documents that were withheld for privilege.

4

attorney-client and work product protections related to communications with teachers Samantha Tauer and Kari Coulter, but Defendants do not have any withheld communications with these individuals. (*Compare* First Farley Decl., Ex. 12, Pemberton Log, Nos. 1, 5, 8, 9, 19–20 *with* Second Farley Decl., Ex. C, Defendants' Log.)

## II.     The parties meet and confer regarding five topics at issue before the Court.

Pemberton, Defendants, and Plaintiff met and conferred on April 13 and 14, 2023, regarding: (1) Pemberton's refusal to produce Heggem for a deposition; (2) the basis for Pemberton's assertion of work-product and/or attorney-client privilege with respect to Heggem's Report and related documents and communications; (3) whether any privilege with respect to the Report or related information had been waived; (4) deficiencies in the Pemberton Privilege Log; and (5) related issues with Defendants' claim of privilege over communications regarding "personnel matters" associated with the Investigation. (First Farley Decl., Ex. 13.) These deficiencies relate to the following document requests served on Pemberton and Defendants, listed along with the corresponding objections and responses:

**Subpoenaed Requests to Pemberton at issue on Plaintiff's Motion:**

**Request No. 2:** With respect to the investigation of Mary Kay Thomas conducted by Josh Heggem in 2021:

   a.  The final version of the investigative report and any drafts thereof;
   b.  All documents or communications related to the investigation;
   c.  All notes related to the investigation; and
   d.  Any other documents created by Pemberton Law, including without limitation Josh Heggem, related to the investigation.

**Objection:   Pemberton Law objects to this Request, and all subparts, on the basis of attorney-client privilege and attorney work product doctrine.**

**Response:   Pemberton Law will produce non-privileged non-protected documents responsive to this Request, if any.**

## Requests to Defendants at issue on Plaintiff's Motion:

**Request No. 14:** Documents and communications concerning the District's 2021 investigation of Plaintiff, any related grievances, and/or any related actions taken by the District with respect to her employment. This includes the entire investigative file, interview notes, communications involving witnesses, and communications involving the investigator(s).

**Objection:   This Request is objected to on the basis that it seeks information that is subject to the attorney-client privilege as well as the mental impressions, conclusions, opinions, and legal theories of Defendant's attorneys, and therefore seeks information beyond the scope of FRCP 26(b)(1). This Request is further objected to on the basis it seeks documents and things which are in the possession and control of Plaintiff. *See also* General Objections.**

**Response:   Without waiving the above-stated Objections, Defendants will produce documentation responsive to this Request at a time mutually agreed upon between the parties, with rolling productions expected to commence no later than March 31, 2022. All documents produced in Response to this Request will be redacted as necessary to remove private educational data on students. *See also* documents produced in Response to all other Requests for production. Discovery continues.**

The parties did not reach a resolution by way of their collective meet and confer, but Pemberton agreed to eliminate entries on its Privilege Log that were unnecessary based on the parties' earlier discussion.[4]

---

[4] Pemberton has not yet provided an updated Privilege Log.

Plaintiff seeks to compel the production of documents related to the Investigation and Report that are currently withheld by Pemberton and MPS. This includes documents and communications withheld by Pemberton or Defendants on the basis of attorney-client or work-product protections between January and June 2021, unredacted, that relate to the Investigation or Report. (*See* Second Farley Decl. ¶ 7, Ex. D (annotated version of Defendants' Privilege Log, with 183 highlighted entries representing those that appear to relate to the Investigation or Report); Ex. F (annotated version of Pemberton's Privilege Log, with 48 highlighted entries representing those that appear to relate to the Investigation or Report).)

## ARGUMENT

### I.    Legal Standard.

Parties are permitted to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Court "should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 12 (1978) (quoting 4 J. Moore, Federal Practice ¶ 26.56[1], p. 26-131 n. 34 (2d ed. 1976)); *see Regents of the Univ. of Minn. v. AT&T Mobility LLC*, No. 14-CV-4666 (JRT/TNL), 2016 WL 7972908, at *3 (D. Minn. Dec. 13, 2016). When Title VII claims are involved, as here, "liberal civil discovery rules give plaintiffs broad access to document their claims" because "proof of an unlawful discrimination claim may require indirect, inferential, or circumstantial evidence." *Onwuka v. Fed. Express Corp.*,

178 F.R.D. 508, 517 (D. Minn. 1997) (citing *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989).)

A party may seek an order to compel discovery if the opposing party fails to respond to discovery requests or otherwise refuses to engage in discovery. *See* Fed. R. Civ. P. 37(a). Once a threshold showing of relevancy is established, the resisting party "must show specifically how the discovery is not relevant or is overly broad, burdensome, or oppressive." *Regents*, 2016 WL 7972908, at *3; *see also Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (due to liberal scope of discovery, a relevancy objection "is a difficult objection upon which to prevail during the discovery phase of an action").

## II.    Documents related to the Investigation and Report are material to Plaintiff's claims and Defendants' defenses.

The Investigation and Report are critical to this litigation, as are related documents. As argued in Plaintiff's Response Memorandum, MPS used the Investigation and Report—which was premised on vague and unsupported allegations against Plaintiff—to support its retaliatory adverse actions against Thomas, including removing her from her position as middle school principal, forcibly assigning her to a new "special projects" position, and putting her on a performance improvement plan of indefinite duration. (*See* ECF No. 49, pp. 10–12, 24–25.) These adverse actions directly underlie Plaintiff's claims in this case; they are what Plaintiff is suing over. Likewise, the Investigation and Report are relevant to Defendants' defenses in this case, and MPS continues to rely on each as support for critical decisions related to Thomas's employment. (*Id.* (quoting Answer ¶¶ 54, 65 ("[T]he School District placed Plaintiff on standard paid administrative leave during an employment

investigation" and "Plaintiff was suspended for seven days without pay as the result of numerous substantiated allegations."); First Farley Decl., Ex. 4, Defs. Answer to Plf.'s Interrogatory No. 4 ("[T]he decision to reassign Plaintiff was the result of the May 11, 2021, Investigative Report."); First Farley Decl., Ex. 3, Williams Dep. at 8:16–9:13 (confirming that Williams "made decisions regarding Mary Kay Thomas's employment in reliance on [the Investigative] Report").)

Documents related to the Investigation and Report are thus relevant to evaluate critical questions of fact in this case, such as what motivated the Investigation, what questions were explored in the Investigation and why, what was considered as part of the Investigation and why, who was interviewed as part of the Investigation and why, whether the Investigation was reliable and conducted in good faith, and how the conclusions of the Report could logically follow if the Investigation was "unable to confirm or deny the validity of many of the specific factual allegations [against Thomas]," because the allegations were "vague," and because there was a "lack of concrete corroborating evidence," or how those conclusions supported any action against Plaintiff. (First Farley Decl. ¶ 3, Ex. 1, p. 16; ECF No. 35, Am. Compl., at ¶ 190.) Information and documents related to the Investigation and Report are thus relevant and discoverable in this case.

## III. Documents related to the Investigation and Report are not protected by the attorney-client privilege, but any arguable protection has otherwise been waived.

Pemberton and Defendants have asserted documents related to the Investigation and Report fall under the attorney-client privilege. But they cannot establish that information related to the Investigative Report is privileged attorney-client communication or protected

work product. Even if they could, however, Pemberton and Defendants have waived any such protections.[5]

      A.    <u>The attorney-client privilege is largely inapplicable.</u>

The attorney-client privilege is inapplicable to documents and communications related to the Investigation and Report. (*See* Plaintiff's Response Mem. pp. 14–15.) The attorney client privilege only protects confidential communications made for the purposes of obtaining or rendering legal advice. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394-95 (1981). Here, certain categories of documents between Pemberton and Defendants that relate to the Investigation and Report are not privileged.

As an initial matter, not all withheld information represents confidential communication between an attorney and a client. Pemberton withheld information between an attorney and various teachers who served as employee-witnesses to the Investigation. (*See, e.g.*, First Farley Decl., Ex. 12, Pemberton Log, entries including Kari Coulter and Samantha Tauer, Nos. 1, 5, 8, 9, 19–20.) Pemberton and witnesses to the Investigation do not have an attorney-client relationship: teachers were forced to participate, were allowed their own representatives at their interviews, and were not directed to help MPS seek legal advice. *See U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. CV 12-877 (JRT/TNL), 2016 WL 1258466, at *4 (D. Minn. Mar. 30, 2016) (finding party asserting privilege "ha[d]

---

[5] Of the 183 challenged entries on Defendants' Privilege Log, 149 of these are withheld exclusively on the attorney-client privilege. (*See* Second Farley Decl. Ex. D.) Of the 48 challenged entries on Pemberton's Privilege Log, 8 of these are withheld only on the attorney-client privilege. (*See* Second Farley Decl. Ex. F.) The Court need not apply its work-product analysis to these entries.

not met its burden of showing that the communication was made for the purpose of seeking legal advice or that any employee was directed to divulge information to seek legal advice for the corporation," so "the employees' interview statements are not protected"). Nor were they informed that Heggem represented Defendants for purposes of evaluating whether any conflict of interest might exist.

Pemberton's log is likewise suspect because certain entries are impossible to assess. Various entries have vague descriptions of multiple documents over a course of months. For example, Entry 85 is a 234-page document dated May 11, 2021, with participants "J. Heggem to MPS," with the description "Investigative Report re: M. Thomas." (*See* Second Farley Decl. Ex. F.) It is entirely unclear how or why any of this information would be protected.

Most notably, however, numerous documents and communications on Pemberton and Defendants' Privilege Logs were not created for the purpose of obtaining legal advice. For the attorney-client privilege to apply, "the attorney must be acting in her capacity as legal counsel." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-CV-1958 (ADM/RLE), 2009 WL 1178588, at *1-2 (D. Minn. May 1, 2009) (finding privilege did not attach to certain communications with in-house counsel); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) (holding a communication must relate to the purpose of obtaining legal advice before it is protected). But "a document is not automatically privileged merely because it involves an attorney and a client or because it is labeled privileged or confidential." *U.S. Bank Nat'l Ass'n*, No2016 WL 1258466, at *2. Rather, where an attorney is "employed solely for the purpose of making an investigation of facts and to

make business recommendations with respect to the future conduct," no privilege applies because the attorney is not "provid[ing] legal services or advice." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977) (explaining that "[t]he work that Law Firm was employed to perform could have been performed just as readily by non-lawyers"). This limitation is necessary: "because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly and 'protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. CV 14-3103 (SRN/FLN), 2015 WL 9861106, at *4 (D. Minn. Oct. 5, 2015), *objections overruled*, No. 14CV03103SRNFLN, 2016 WL 6774229 (D. Minn. Nov. 15, 2016) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1423–24 (3d Cir. 1991)).

Here, the Investigation and Report were not completed for legal advice. Heggem was "engaged to conduct a thorough investigation, including a review of pertinent documents and an interview of 19 witnesses," which includes no indication of legal advice or services and could readily be performed by a non-lawyer. (Pemberton Mem. at 2.) Yet, as reflected in Pemberton and Defendants' Privilege Logs, documents were apparently withheld simply because they related to the Investigation. (First Farley Decl., Ex. 12, Pemberton Log Entry Nos. 27–28 ("Emails to/from MPS re investigation"); Second Farley Decl., Ex. C, Defendants Log Entry No. 1419706 ("Communications with General Counsel Pemberton Law regarding investigation advice").) The Investigation was merely an inquiry into factual circumstances surrounding employment complaints against Plaintiff—it does not involve legal services or advice, and neither Defendants nor Pemberton have articulated

what legal services or advice was involved outside of conclusory, unsupportable assertions. The mere involvement of an attorney in an ordinary personnel matter does not shield those activities from discovery. Pemberton and Defendants cannot establish that the withheld communications are privileged, and the Court should compel production of these documents.

B.  <u>Pemberton and Defendants have waived any claim to attorney-client privilege.</u>

Even if the Court finds communications and documents related to the Investigation and Report are privileged, any claim to privilege has been waived by way of a subject matter waiver or at-issue (implied) waiver.

i.  <u>Subject Matter Waiver.</u>

As articulated in Plaintiff's Response Memorandum, Pemberton and Defendants have made a subject matter waiver over any claim of privilege related to the Investigation or Report. (*See* Plaintiff's Response Mem. pp. 17–19.) Generally, voluntary disclosure of attorney client communications expressly waives the privilege, and "courts typically apply such a waiver to all communications on the same subject matter." *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991-92 (8th Cir. 1999) (citation omitted), cert. denied, 529 U.S. 1020 (2000); *see* Federal Rule of Evidence 502(a). The Court must apply principles of fairness to determine the scope of waiver involving a voluntary disclosure because the purpose of the subject-matter waiver is "to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Shukh v. Seagate Tech., LLC*, 848 F. Supp.

2d 987, 990 (D. Minn. 2011), aff'd, 872 F. Supp. 2d 851 (D. Minn. 2012) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006)).

Here, Pemberton and Defendants intentionally disclosed the following, which supports a subject-matter waiver over all information related to the Investigation and Report:

- The Report was given to Thomas in or around May 2021;
- Defendants produced the Report in this litigation;
- Defendants produced documents about the Investigation including, for example, approximately 100 emails to or from Heggem between March 3 and 19, 2021;
- Defendants produced Williams's handwritten notes from meetings with Heggem and Hastings about the Investigation;
- Defendants have allowed deponents to discuss the Investigation in depositions; and
- In response to Plaintiff's subpoena for documents, Pemberton produced hundreds of documents related to the Investigation and Report.

(Plf. Response Mem. pp. 18–19.) Pemberton and Defendants cannot selectively disclose information to their advantage while withholding other relevant information on the same subject. Fairness requires that both parties have the opportunity to understand the Report in context, rather than in the context of Defendants' selective and unfair disclosures of some but not all information related to the Report. Pemberton and Defendants have intentionally waived any claim of attorney-client privilege related to the Investigation and Report, as well as related documents and information.

   ii.  *At-Issue / Implied Waiver.*

As articulated in Plaintiff's Response Memorandum, Pemberton and Defendants have also made an at-issue (implied) waiver over any claim of privilege or work product protections related to the Investigation or Report. (Plf. Response Mem. pp. 19–22.) A party

waives a claim of privilege over otherwise protected information where "a client asserts reliance on the advice of counsel as an element of a claim or defense" and places the information at issue. *Sedco, International, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982), *cert. denied*, 459 U.S. 1017 (1982); *Pamida*, 281 F.3d at 732; *Hervey*, 2006 WL 8443651, at *5 (compelling discovery on investigatory report). Again, applying principles of fairness, if a party relies on otherwise privileged information during litigation, it cannot selectively withhold related information from discovery. *See Shukh*, 848 F. Supp. 2d at 991.

Here, Defendants have placed the Investigation and Report at issue because they are relying on both to support adverse actions against Thomas, as expressly stated in Defendants' Answer to the Amended Complaint, in response to Plaintiff's Interrogatory No. 4, and in deposition testimony of Superintendent Williams. (Plf. Response Mem. pp. 21–22.) Because Defendants are actively and independently inserting the Investigation and Report into this litigation, they have intentionally waived any claim of attorney-client privilege over related documents and communications. The Court should thereby compel production of this information.

## IV.  Documents related to the Investigation and Report are not protected by the work product doctrine, but any protection has otherwise been waived.

Pemberton and Defendants have asserted documents related to the Investigation and Report fall under the work-product doctrine. But they cannot establish that information related to the Investigative Report is protected work product. Even if they could, however,

Pemberton and Defendants have waived any attorney-client privilege or work product protections.[6]

###### A.    The work-product doctrine is inapplicable.

The work-product doctrine does not apply here. (*See* Plaintiff's Response Mem. p. 15–16.) The work-product doctrine protects from discovery a party's "documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Here, the Investigation was not conducted in anticipation of litigation, but rather for the purpose of investigating factual, workplace allegations against Thomas. (*See* First Farley Decl., Ex. 1, p. 5; Ex. 3, Williams Dep. at 8:23–9:13.) "[T]he work product rule does not come into play merely because there is a remote prospect of future litigation." *Diversified Indus*, 572 F.2d at 604; *see U.S. Bank Nat'l Ass'n*, 2016 WL 1258466, at *3 ("The work-product doctrine does not automatically apply because the subject matter of a document relates to a subject that might conceivably be litigated or because the materials were prepared by lawyers or represent legal thinking.") Importantly, the fact the subject of an investigation "could conceivably be litigated and

---

[6] Of the 183 challenged entries on Defendants' Privilege Log, only one of these is withheld exclusively on work product protections. (*See* Second Farley Decl. Ex. D.) Of the 48 challenged entries on Pemberton's Privilege Log, 10 of these are withheld only on work product protections. (*See* Second Farley Decl. Ex. F.) The Court need not apply its attorney-client privilege analysis to these entries.

likely was litigated at some point is not determinative." *U.S. Bank Nat'l Ass'n*, 2016 WL 1258466, at \*3.

In March 2021, there was no threat of litigation from Plaintiff—any potential for litigation arose after, and in large part because of, the Investigation and subsequent adverse actions. Therefore, the Investigation, Report, and related documents and communications cannot constitute protected work product. *Hervey v. Nelson*, No. CV 04-4537 (MJD/RLE), 2006 WL 8443651, at \*5 (D. Minn. Jan. 5, 2006) (finding no protections over employment investigation or associated information).

Still, the Eighth Circuit has distinguished between ordinary work product and opinion work product.[7] Opinion work product "includes counsel's mental impressions, conclusions, opinions or legal theories" and is only discoverable in certain circumstances. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinary work product "includes raw factual information" and "is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* Here, the Investigation was done to uncover facts, and the Investigative Report includes only factual—not legal—conclusions.

---

[7] Neither Pemberton nor Defendants differentiate between ordinary and opinion work product on their Privilege Logs, an "important" distinction. *Evans*, 22022 WL 1537994, at \*11

No legal services were rendered, no legal advice was given. So, if anything, the work product would be ordinary, not opinion.

Where there is a claim of ordinary work product, however, that information may still be discovered if there is a substantial need and the information is not otherwise available through other means. Federal Rule of Civil Procedure 26(b)(3). As discussed herein and in Plaintiff's Response Memorandum, information underlying and related to the Investigation is material to this case. (ECF No. 49, pp. 10–12, 24–25.) Plaintiff cannot obtain this information from any source but Pemberton or Defendants, both of which have withheld such information from Plaintiff.

Ultimately, documents related to the Investigation and Report are not protected work product, but even if they are, Plaintiff is entitled to discover this information. The Court should compel production of this information.

B.  Pemberton and Defendants have waived any claim of work product protections.

Even if the Court finds communications and documents related to the Investigation and Report are protected work product, any claim to privilege has been waived. (*See* Plaintiff's Response Mem. pp. 17–22.)

As asserted herein and in Plaintiff's Response Memorandum, Defendants and Pemberton have made a subject-matter waiver over documents and communications related to the Investigation and Report. For the same reasons, "[t]his waiver extends to documents protected under the work product doctrine." *Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*, No. CV 12-2703 (MJD/SER), 2015 WL 12977507, at *4 (D. Minn. June 1,

2015) (extending attorney client privilege waiver to work product); *see* Federal Rule of Evidence 502(a); *Luminara Worldwide*, 2015 WL 9861106, at *4 (finding subject-matter waiver over work product). This includes opinion work product, which protections may be lost if a client places an attorney's opinions into direct issue. *See Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 677 (D. Minn. 2002)

The work-product doctrine may also be impliedly waived when the party claiming the protection brings a claim "in which the information allegedly protected is crucial and unavailable by other means," intends to waive the protection, and "the interests [of] fairness and consistency mandate a finding of waiver." *Pamida*, 281 F.3d at 732; *Hervey*, 2006 WL 8443651, at *5 ("[A] party may impliedly waive its attorney work product privilege."). As with privilege waivers, the work product protection should not be used to shield information that underlines the allegation, and the Court must consider "whether the interests of fairness and consistency mandate a finding of waiver." *Pamida*, 281 F.3d at 732. Here, Plaintiff has attempted to discover information related to the Investigation and Report from Pemberton and Defendants, both of which produced some responsive information but withheld other information. There does not appear to be any clear line drawn between what is work product and what is not, and even Pemberton and Defendants seem to conflict in their understanding of what might arguably be work product. For example, Pemberton has claimed attorney-client and work product protections related to communications with teachers Samantha Tauer and Kari Coulter, but Defendants do not have any withheld communications with these individuals. (*Compare* First Farley Decl., Ex. 12, Pemberton Log, Nos. 1, 5, 8, 9, 19–20 *with* Second Farley Decl., Ex. C, Defendants

Log.) By way of another example, of the 183 challenged entries on Defendants' Privilege Log, only one of these is withheld exclusively on work product protections, whereas Pemberton withheld far more documents on the basis of work product, even though there is likely an overlap on what documents are withheld. (*Compare* Second Farley Decl. Ex. D *with* Ex. F.)

"In the vernacular, the work product privilege is intended to shield the strategic considerations of a party's attorney from exploration by the opposing party, but the privilege should not be wielded as a sword to advance the holder's interest, while depriving the opponent of the bases upon which the strategic considerations are premised." *Minnesota Specialty Crops*, 210 F.R.D. at 677. That is exactly what is happening here. Pemberton and Defendants cannot selectively disclose some documents while withholding other documents as work product. The disclosure of various documents related to the Investigation and Report was intentional, and there is no other way to discover the information that remains withheld. Fairness mandates the disclosure of all information related to the Investigation and Report. This discovery is material to Plaintiff's allegations and Defendants' defenses, it will allow Plaintiff the opportunity to understand the investigation in context, and eliminate Defendants' current informational advantage. Production of this information should be compelled.

## II.     **Plaintiff is entitled to fees and costs.**

Under Rule 37(a)(5), if a motion to compel is granted, the party who necessitated the motion must "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless (1) the moving party failed to make a good faith effort to

obtain the discovery without court action, (2) the opposing party's nondisclosure, response, or objection was substantially justified, or (3) other circumstances exist that make an award of expenses unjust. None of these exceptions apply.

Plaintiff made a good-faith effort to obtain discovery without a formal motion by engaging in conversations with opposing counsel over a period of months. Pemberton and Defendants' collective failure to produce discovery is not substantially justified, and the objections are contrary to the authority in this District. Furthermore, there are no circumstances that would make a reward of expenses unjust.

## CONCLUSION

For the reasons set forth herein and in Plaintiff's Response Memorandum, Plaintiff's Motion to Compel should be granted.

Respectfully submitted,

Dated: May 9, 2023        **NICHOLS KASTER, PLLP**

 s/Laura A. Farley
David E. Schlesinger, MN Bar No. 0387009
Laura A. Farley, MN Bar No. 0397455
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
schlesinger@nka.com
lfarley@nka.com

Dated: May 9, 2023        **PREMO FRANK PLLC**

 s/Matthew Frank
Matthew A. Frank, MN Bar No. 0395362
333 Washington Ave. N., Suite 300
Minneapolis, MN 55401

Telephone: (612) 445-7041
matt@premofrank.com

**ATTORNEYS FOR PLAINTIFF**