# United States Court of Appeals
## For the Eighth Circuit

---

No. 24-3176

---

Mary Kay Thomas

*Plaintiff - Appellant*

v.

Marshall Public Schools, Independent School District 413; Members of the Marshall School Board, in their official capacities; Jeff Chapman, in his individual and official capacities; Bill Swope, in his individual and official capacities; Superintendent Jeremy Williams, in his individual and official capacities

*Defendants - Appellees*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: June 11, 2025
Filed: August 26, 2025

---

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

---

ERICKSON, Circuit Judge.

Mary Kay Thomas commenced this action against Marshall Public Schools, Independent School District 413, former superintendent Jeremy Williams, and Marshall School Board members (collectively the "District"), asserting claims under the Minnesota Human Rights Act, Title VII of the Civil Rights Act of 1964, Title IX

of the Education Amendments of 1972, and the First and Fourteenth Amendments to the United States Constitution. Thomas's claims arise out of her removal as Marshall Middle School principal and reassignment to an administrative position. She appeals from the district court's[1] adverse grant of summary judgment dismissing her First Amendment claim and its decision declining to exercise supplemental jurisdiction over the state law claims. On appeal, Thomas contends the district court erred when it found she failed to show causation and concluded her speech was not private speech. We affirm.

## I. BACKGROUND

Thomas was employed by the District for nearly 30 years, beginning as a teacher and then as the middle school principal for 15 years. In December 2019, Thomas decided to implement an "inclusion project." As part of the project, she used District funds to create a flag display in a common area of the school. On behalf of the District, she purchased approximately 30 flags—including a Pride flag. The flags were placed by school staff.

Following the flag placement, Thomas emailed school staff informing them that the inclusion project was part of her "personal/professional goals." In the email, Thomas also disclosed that she was establishing a new task force specifically focused on inclusion. Controversy arose almost immediately when some staff and community members objected to the inclusion of the Pride flag in the display. When some teachers expressed concern that Thomas was inappropriately "pushing" LGBTQ+ issues that they felt unprepared to discuss with middle schoolers, the then School Board Chair, Jeff Chapman, asked Thomas to remove the Pride flag.

District Superintendent Scott Monson initially supported the decision to remove the Pride flag, but he quickly reversed his position once he consulted with

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

the District's legal counsel. When the issue was presented to the School Board, the Board decided to allow the flag display to remain. During this time, Thomas continued to show support for LGBTQ+ students by hanging signs, giving the staff Pride "ally" stickers to display, and confiscating a student petition seeking to have the Pride flag removed.

On June 1, 2020, while the schools were operating remotely due to the COVID-19 pandemic, the Board met in a closed session with its legal counsel. Following that meeting, the Board adopted a statement reaffirming its decision that displaying the Pride flag was consistent with District policy and it could remain displayed when classes resumed in the fall. Every Board member except Chapman voted in favor of the reaffirmation. Superintendent Monson resigned at the end of the 2019–2020 academic year and Jeremy Williams succeeded him.

When in-person classes resumed, Thomas helped create a new student organization, the Gay-Straight Alliance ("GSA"), guiding students through the District's official process for approving a new club. A group of staff reported to Superintendent Williams that Thomas sent an email to them directing them to promote the GSA to students regardless of their personal beliefs. Numerous staff members also expressed their opinions that Thomas had adopted a "divisive" leadership style, her conduct had created a negative workplace, and she was improperly pressuring others to endorse LGBTQ+ advocacy.

In December 2020 and again in February 2021, Superintendent Williams asked Thomas to consider a reassignment from the principal position to a different role within the District to ward off a formal investigation. Thomas declined and shortly thereafter sought supporters—both inside and outside the District—seeking letters of support directed to Superintendent Williams and the Board praising her record and supporting her against the allegations made by the discontented teachers.

At a closed Board meeting on March 1, 2021, Superintendent Williams informed the Board of staff complaints, noting that most were general complaints of

a divided culture and accusations of unprofessional leadership. The Board decided to retain an outside law firm to conduct a formal investigation, and placed Thomas on paid administrative leave. While the investigation was ongoing, Thomas filed a discrimination charge with the Minnesota Department of Human Rights. During this entire time, some outside community members continued to press the Board to remove the Pride flag or include opposing viewpoint flags such as a "Straight Pride" flag and other flags referencing religious or ideological positions.

In May 2021, the investigator's report concluded that Thomas's conduct contributed to staff discontentment and created "a negative, divided, and uncomfortable work environment." The report further found that Thomas had "violated the common-sense expectations of professionalism and ethics generally placed on public school administrators." In response to the report, the District offered Thomas a severance package, but she refused the offer. In June 2021, Williams suspended Thomas for a week without pay, removed her as principal, and reassigned her to the position of "Coordinator of Special Projects." The Board ratified this decision, including the new job assignment. The District also notified Thomas that she was suspended due to leadership difficulties with school staff.

Thomas commenced this action alleging state claims based on reprisal for associating with members of the LGBTQ+ community and for rejecting sexual advances, and federal claims premised on associational sex discrimination and retaliation. Following cross-summary judgment motions, the district court found Thomas had engaged in government speech, which was not protected by the First Amendment. The district court further found that Thomas did not present sufficient evidence to show any speech she made as a private person was a substantial or motivating factor in the District's decision to take adverse action against her. The district court dismissed Thomas's federal claims with prejudice and declined to exercise supplemental jurisdiction over the remaining state claims, dismissing them without prejudice. This appeal followed.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo*, viewing all facts and drawing all reasonable inferences in Thomas's favor. Goldsmith v. Lee Enters., Inc., 57 F.4th 608, 610 (8th Cir. 2023). The only federal claim Thomas challenges on appeal is the district court's dismissal of her First Amendment claim, asserting the district court erred when it held no reasonable jury could find the District retaliated against her because of her protected speech.

### A. First Amendment Retaliation

Thomas contends the District retaliated against her because of her pro-LGBTQ+ speech in violation of the First Amendment. A public employee's claim of First Amendment retaliation is analyzed using the framework set out in Garcetti v. Ceballos, 547 U.S. 410 (2006), and Pickering v. Board of Education, 391 U.S. 563 (1968). To demonstrate a cognizable claim, an employee must first show that her speech (1) was made as a citizen, rather than pursuant to official duties; (2) addressed a matter of public concern; and (3) was a substantial or motivating factor in an adverse employment action. Davison v. City of Minneapolis, 490 F.3d 648, 654–55 (8th Cir. 2007). If the employee establishes a prima facie claim of retaliation for exercise of First Amendment rights, the employer may avoid liability by demonstrating that its interest in workplace efficiency outweighed the employee's speech rights or that it would have taken the same employment action regardless of the protected speech. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284, 287 (1977). No one disputes that Thomas spoke on a matter of public concern. Nor is there a dispute about whether Thomas suffered adverse action. The dispute centers on the first and third prongs of the Garcetti/Pickering framework: whether Thomas was speaking as a citizen or pursuant to official duties and whether her speech was a substantial or motivating factor in her new job assignment.

1. Speaking "as a Citizen" or "Pursuant to Official Duties"

Whether an employee spoke as a citizen on a matter of public concern is a question of law for the court. McGee v. Pub. Water Supply, Dist. No. 2, 471 F.3d 918, 920 (8th Cir. 2006) (citing Connick v. Myers, 461 U.S. 138, 148 n.7 (1983)). When a public employee engages in speech in the performance of her official duties, that speech is unprotected under the First Amendment. Lyons v. Vaught, 875 F.3d 1168, 1173 (8th Cir. 2017). Determining whether Thomas's speech was made in an official capacity requires a "practical inquiry." Id. at 1174. A public employee's speech is made pursuant to her official duties if it "owes its existence" to her professional responsibilities. Id. (quoting McGee, 471 F.3d at 921). That said, a public employee's speech may also be made pursuant to her official job duties even when it was neither required by her job description nor requested by her employer. Id. The critical question is whether the speech is "ordinarily within the scope" of the employee's duties. Id. at 1173 (citing Lane v. Franks, 573 U.S. 228, 240 (2014)).

Thomas contends the district court erred by not heeding the Supreme Court's reminder in Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 543 (2022), that not everything a public employee says or does in a workplace is government speech. She argues the district court engaged in a flawed analysis because her speech was not unprotected simply because it occurred at the middle school. However, unlike in Kennedy, which involved a football coach who offered a "brief, quiet prayer" at the 50-yard line during his personal time, Thomas emailed her staff to inform them that the inclusion project was part of her "professional" goal to ensure "all students feel INCLUDED." She used District funds to buy the Pride flag, she directed custodial staff to arrange the flags, she confiscated a student petition seeking to remove the Pride flag, she distributed Pride stickers, and she refused requests to install flags of differing viewpoints. These activities involved the expenditure of public funds or occurred during the performance of Thomas's school duties.

Thomas exercised similar authority in facilitating the creation of the GSA student organization. She enlisted District resources and staff, she helped the GSA's

organizers navigate District policy, and she used her official channels to direct her staff to promote the organization to students. This conduct is indicative of acting in her role as middle school principal, rather than expressing an opinion as a private citizen. Thomas also testified that a principal's professional responsibilities include curating educational displays, providing resources to staff, and facilitating the creation of student groups. Thomas's acknowledged responsibilities and her conduct show that she was engaging in speech in the performance of her official duties. Lyons, 875 F.3d at 1174.

Thomas also relies on this Court's recent decisions in Noon v. City of Platte Woods, 94 F.4th 759 (8th Cir. 2024), Cajune v. Indep. Sch. Dist. 194, 105 F.4th 1070 (8th Cir. 2024), and Gustilo v. Hennepin Healthcare Sys., 122 F.4th 1012 (8th Cir. 2024), to support her contention that she spoke as a private citizen when she engaged in pro-LGBTQ+ speech. She argues these cases show public employees do not necessarily lose First Amendment protections just because they address controversial issues. Thomas's conduct, however, is not analogous to the conduct this Court deemed private speech in Noon and Cajune. See Noon, 94 F.4th at 764 & n.2 (speech involving financial mismanagement, workplace misconduct, and investigative failures made outside regular duties as police officers); Cajune, 105 F.4th at 1075, 1079–80 (school district left to the discretion of each teacher whether to post in their classroom Black Lives Matter posters created with input from private actors). Likewise, Thomas reads Gustilo at too high a level of generality. In Gustilo, there was little doubt that an employee's private Facebook posts spoke to matters of public concern because the posts referenced controversial political issues, including presidential candidates, fascism, racism, police killings, Black Lives Matter, socialism, and COVID. Gustilo, 122 F.4th at 1015, 1018–20. Thomas's conduct is not analogous to the private Facebook posts at issue in Gustilo. A practical inquiry supports the conclusion that when Thomas created the middle school flag display, distributed Pride stickers at school, and assisted in creating the school's GSA, she did so in her capacity as school principal.

2. Thomas's "Outside" Communications

Thomas also claims that she was retaliated against for building a coalition of community members to support LGBTQ+ students and then encouraging the coalition to contact the Board in support of her ideas through a letter writing campaign and other forms of contact. This conduct included text messages and other communications to family, community activists, and friends. Thomas has not pointed to evidence in the record showing anyone who had decision-making authority related to her employment relied on her words in these private communications or the advocacy campaign itself as a but-for cause of the subsequent adverse actions. This sort of evidence is necessary to establish that the District punished Thomas for her private communications, in contravention of the First Amendment. See De Rossitte v. Correct Care Sols., LLC, 22 F.4th 796, 804 (8th Cir. 2022) (requiring "direct or indirect" evidence linking any adverse action to the protected conduct). Because Thomas has not pointed to any evidence in the record demonstrating the District relied on her emails, texts, or letter writing campaign when it took adverse action against her, she cannot show she was retaliated against in violation of the First Amendment. See id.; see also Mogard v. City of Milbank, 932 F.3d 1184, 1190 (8th Cir. 2019) (holding that a public official had no clearly established right to give a speech about patrol vehicle safety to community leaders or the media because his employer could have thought he was speaking pursuant to his official job duties.).

While Thomas also contends the district court ignored or downplayed certain letters of recommendation, staff testimony, or timeline details that favored her, none of that evidence alters the conclusion that Thomas was acting pursuant to her official duties as school principal when she installed the Pride flag with District resources, directed staff to facilitate the GSA, and used the school's official channels to advocate LGBTQ+ support. See Garcetti, 547 U.S. at 421; see also Noon, 94 F.4th at 764 ("If the speech owes its existence to a public employee's professional responsibilities it is not made as a private citizen." (cleaned up)). To the extent some of Thomas's outside efforts might have been personal speech, she has not pointed to

evidence showing the Board or the Superintendent relied on those efforts when it took adverse action against her. See De Rossitte, 22 F.4th at 804. The district court's grant of summary judgment reflects that Thomas's speech owed its existence to her professional responsibilities as a public official and is not protected by the First Amendment. See Lane, 573 U.S. at 240; Garcetti, 547 U.S. at 421.

3. "Substantial or Motivating Factor"

Thomas also challenges the district court's determination that she failed to present evidence from which a reasonable jury could conclude her protected activity was a substantial or motivating factor in the District's adverse employment actions. Whether protected conduct was a substantial or motivating factor in an employment decision is a factual question that we review for clear error. See Skalsky v. Indep. Sch. Dist. No. 743, 772 F.3d 1126, 1130 (8th Cir. 2014). On the other hand, whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law that we review *de novo*. See id. When this Court reviews a sufficiency of the evidence determination, it must view the facts and all reasonable inferences in a light most favorable to the nonmoving party. Cox v. Miller Cnty. R-I Sch. Dist., 951 F.2d 927, 931 (8th Cir. 1991).

Thomas contends the district court erred when it focused on the 13-month gap between her January 2020 letter writing campaign in support of the Pride flag and her February 2021 notice that staff had lodged general complaints about her leadership. Thomas argues this timeline overlooks her continuing pro-LGBTQ+ advocacy occurring sufficiently close in time to the adverse action so as to support an inference of retaliatory motive. "Temporal proximity between protected activity and an adverse employment action can contribute to establishing the third element of a prima facie case of retaliation." Davison, 490 F.3d at 657. However, our court has held that "[t]he temporal proximity must be extremely close to establish the causal connection without other evidence of discriminatory animus." Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) ("Although we have not drawn a definitive line, we have determined that a one-month or two-month lag is

too long absent other evidence."). Thomas bears the burden of showing that the decisionmakers who imposed discipline on her did so because of her protected speech. Cox, 951 F.2d at 931.

Thomas has not pointed to evidence suggesting her advocacy motivated the decision to remove her as principal. Although the district court reviewed evidence of staff complaints about Thomas's divisive leadership that began in early 2020, it also reviewed evidence suggesting the District publicly condoned the Pride flag in mid-2020 and told Thomas she could leave it in place. The district court also reviewed evidence of an outside investigation that found Thomas created a "negative, divided, and uncomfortable work environment." Thomas points to no record evidence indicating the relevant decision makers acted for any reason other than staff morale and the work environment that Thomas created. See Johnson, 66 F.4th 1117 (noting causation generally requires more than timing alone). Moreover, Thomas's earliest adverse action occurred more than 13 months after she organized a campaign to lobby the Board—a significant gap that undermines any inference of causation. See Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006) (stating "an interval as brief as two months did not show causation"). The district court did not err when it concluded the 13-month gap between Thomas's January 2020 letter writing campaign and the February 2021 investigation undermined any inference of causation.

Thomas also contends the district court erred when it concluded intervening events severed the inference of causation because staff complaints and the outside investigation were tainted by anti-LGBTQ+ bias. While intervening events do not automatically negate causation, "an intervening event that *independently* justified adverse disciplinary action" can sever any inference that protected activity caused the adverse action. See Kuduk v. BNSF Ry., 768 F.3d 786, 792 (8th Cir. 2014); accord Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 915 (8th Cir. 2006) (finding that the plaintiff's angry outburst around his co-workers severed causation). Here, the evidence in the record includes months of staff frustration with what they perceived as Thomas's unprofessional management style based on

allegedly harsh or inconsistent treatment. When teachers reported Thomas for "unfairly or unequally" targeting them and creating a "toxic environment," Superintendent Williams referred the matter to the Board, and the Board approved an outside investigation. The district court observed the investigation substantiated the staff's complaints about Thomas's leadership style. Thomas's speculation—that animus infected the complaints, the investigation, and the Board's decision—is insufficient to create a triable issue regarding a retaliatory motive. See Cox, 951 F.2d at 932; see also Fatemi v. White, 775 F.3d 1022, 1041 (8th Cir. 2015) ("[B]are assertion and speculation as to an employer's motive does not create a genuine issue of material fact." (cleaned up)).

Nor is Thomas's claim of generalized anti-LGBTQ+ hostility sufficient to create a genuine issue of material fact. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986–87 (8th Cir. 2011) (rejecting bare allegations of a retaliatory motive that are unsupported by any evidence). Evidence supports the district court's conclusion that the intervening staff complaints and independent investigation "eroded any causal connection" between Thomas's speech and the adverse actions taken against her. See Cheshewalla v. Rand & Son Constr. Co., 415 F.3d 847, 852 (8th Cir. 2005).

Viewing the record in the light most favorable to Thomas, no reasonable jury could find that her pro-LGBTQ+ advocacy was a substantial or motivating factor for her suspension and reassignment. See Skalsky, 772 F.3d at 1130–31. Thomas has identified no evidence that the District took adverse action because of her "outside" or private speech. Instead, the record shows the grounds for the District's actions were to address staff complaints and to resolve ongoing leadership concerns.

### B. Minnesota Human Rights Act Claims

After dismissing Thomas's federal claims, the district court declined to exercise supplemental jurisdiction over Thomas's remaining state claims and dismissed these claims without prejudice. Thomas appeals dismissal of the

Minnesota Human Rights Act claims, asserting the reason for declining to exercise jurisdiction no longer applies.

When a district court has the discretion to exercise supplemental jurisdiction over a claim but declines to do so, we review its decision for abuse of discretion. Hunter v. Page Cnty., 102 F.4th 853, 869 (8th Cir. 2024). We typically find no abuse of discretion if no federal claims survive summary judgment proceedings and dismissal of the state claims is without prejudice. See Joseph v. Allen, 712 F.3d 1222, 1229 n.6 (8th Cir. 2013). We can find no abuse of discretion in the district court's decision declining to exercise supplemental jurisdiction in this case.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

______________________________